**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT BROSCHART,

                Plaintiff,

                v.

HUSQVARNA AB, also known as Husqvarna Professional Products, Inc., formerly known as Redmax and/or Redmax/Komatsu Zenoah America; JOHN DOES 1-5 (fictitious names, true identities unknown at this time); and ABC COMPANY 1-2 (fictitious names, true identifies unknown at this time),

                Defendants.

Civil Action No. 20-18795 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon two motions. The first motion is Defendant Husqvarna AB's ("Defendant") Motion to Dismiss. (ECF No. 4.) Plaintiff opposed (ECF No. 14) and Defendant replied (ECF No. 15). The second motion is Plaintiff Robert Broschart's ("Plaintiff") Motion to Remand. (ECF No. 5.) Defendant Husqvarna AB[1] opposed. (ECF No. 7.) Plaintiff did not file a reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Plaintiff's Motion to Remand and grants Defendant's Motion to Dismiss under Rule 12(b)(6).

---

[1] Because Plaintiff has not identified by name any additional defendant other than Husqvarna AB, and no other Defendant has submitted a filing in this matter, the Court will refer to Defendant in the singular.

I.  **BACKGROUND**

The motions arise out of a personal injury suit in which Plaintiff alleges he was injured while using a "line trimmer" bearing a RedMax label. (Am. Compl. ¶¶ 2–10, Ex. A to Pl.'s Notice of Rem., ECF No. 1-1; Pl.'s Opp'n Br. 1, ECF No. 14.) Plaintiff claims that the device "was not reasonably fit, suitable or safe for its intended proposed use because it failed to contain adequate warnings and instructions." (Am. Compl. ¶ 9.) As a result, Plaintiff alleges that he "sustained severe personal injuries and disfigurement." (*Id.* ¶ 10.)

Plaintiff initially filed a complaint against "RedMax and/or RedMax/Komatsu Zenoah America, John Does 1-5 and ABC Company 1-5." (Pl.'s Opp'n Br. 1.) Plaintiff asserts that "[t]he Complaint was personally served on October 12, 2020, at a RedMax facility located at 52A Route 34, Matawan, New Jersey." (*Id.* at 2.) Defendant contends, however, that the location where Plaintiff served his initial complaint was not, in fact, a RedMax corporate office, but rather the address of an independent retail store named C.A. Power Equipment, which sells several brands of outdoor equipment, including RedMax. (Def.'s Opp'n Br. 2–3, ECF No. 7.) The initial complaint appears to have been served on an employee of C.A. Power Equipment named Matt Allen. (Pl.'s Moving Br. 1, ECF No. 5-2; Def.'s Opp'n Br. 9.)

On November 4, 2020, Plaintiff amended its complaint to name Husqvarna AB, a Swedish corporation and owner of the RedMax brand, as a Defendant in the suit. (Pl.'s Opp'n Br. 3; Pl.'s Moving Br. 1.) On November 6, 2020, Plaintiff served the amended complaint at the corporate office of Husqvarna Professional Products, Inc. (HPP) on an individual named Robert Tesch, the Vice President and Chief Financial Officer of HPP and Husqvarna Consumer Outdoor Products (HCOP). (Def.'s Opp'n Br. 3–4; Certif. of Robert C. Tesch, Jr. ¶ 4, ECF No. 7-1.)

Defendant contends that Plaintiff's service of Mr. Tesch did not constitute proper service of Husqvarna AB. (Def.'s Opp'n Br. 3–4.) Defendant argues that HPP and HCOP are "indirect, independent subsidiaries of Husqvarna AB" and asserts that "each of these three companies adheres to corporate formalities and pursues its own distinct corporate purpose." (*Id.* at 10.) Moreover, Defendant maintains that while "HPP and HCOP are Delaware corporations having their principal places of business located in North Carolina, Husqvarna AB is a foreign company organized under the laws of Sweden." (*Id.*) Furthermore, Defendant provides a sworn affidavit from Mr. Tesch certifying that he "is not an agent or employee of Husqvarna AB, nor is he authorized to accept service of legal papers on behalf of Husqvarna AB . . . . He is employed by HPP, and additionally serves as the Vice President, Treasurer, and Chief Financial Officer for both HPP and HCOP." (*Id.*; *see also* Tesch Certif., ECF No. 7-1.) Defendant indicates that although "indirect, independent subsidiaries of Husqvarna AB became aware of the pleading [on November 6, 2020,]" "Husqvarna AB was never actually provided with a copy of Plaintiff's pleadings or a summons until well after November 11, 2020." (Def.'s Opp'n Br. 5, 12.)

On December 11, 2020, Defendant filed a Notice of Removal based on diversity jurisdiction. (ECF No. 1.) On December 18, 2020, Defendant filed the instant Motion to Dismiss under Federal Rules of Civil Procedure[2] 12(b)(2), for lack of personal jurisdiction; 12(b)(5) for insufficient service; and 12(b)(6), for failure to state a claim upon which relief could be granted. (Def.'s Moving Br. 1.)

On January 11, 2021, Plaintiff filed a Motion to Remand, arguing that Defendant's Notice of Removal was untimely. (Pl.'s Moving Br. 2.) Plaintiff characterizes Mr. Tesch as a "corporate officer of Husqvarna AB" and asserts that when Tesch was served with a copy of the

---

[2] Unless otherwise indicated, any references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

3

summons and complaint on November 6, 2020 this began the 30-day timeline for Defendant to file a Notice of Removal under Rule 1446(b). (*Id.* at 1, 4.) Defendant responds that because Mr. Tesch is neither an officer nor an agent of Husqvarna AB (nor even an employee), and was not otherwise authorized to accept service on behalf of Husqvarna AB, Plaintiff's service was defective and did not begin the 30-day clock, therefore its filing of the Notice of Removal on December 11, 2020 was timely. (*See generally* Def.'s Opp'n Br.)

## II. DISCUSSION

### A. Plaintiff's Motion to Remand

As a threshold matter, the Court notes that once a motion to remand has been filed, "it is incumbent upon the Court to proceed to decide that motion first because, if granted, the case is remanded back to the court of initial jurisdiction for proceedings." *Chrustowski v. Cumberland Cnty. Guidance Ctr.*, No. 06-4847, 2006 WL 3780555, at *2 (D.N.J. Dec. 20, 2006); *see also Newton v. S. Jersey Paper Prod. Co., Inc.*, No. 19-17289, 2020 WL 2059954, at *2 (D.N.J. Apr. 29, 2020) ("Though [d]efendant's motion to dismiss came earlier in time than [p]laintiff's motion to remand, the Court is obligated to consider [p]laintiff's motion to remand first.") The Court, therefore, first considers Plaintiff's Motion to Remand to determine whether it has jurisdiction over this matter.

#### 1. Legal Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." 28 U.S.C. § 1441(a). Once an action has been removed, however, a plaintiff may challenge such a removal by moving to remand the case back to State court. 28 U.S.C. §1447. Grounds for remand include: "(1) lack of district court

4

subject matter jurisdiction or (2) a defect in the removal process." *Advanced Orthopedics & Sports Med. Inst. v. Blue Cross Blue Shield of N.J.*, No. 17-11807, 2018 WL 3630131, at *2 (D.N.J. July 31, 2018) (citing *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993)). In this case, Plaintiff argues that the removal process was defective because of Defendant's alleged failure to adhere to the thirty-day deadline for removal.

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quotations and citation omitted). "To determine the validity of service before removal, a federal court must apply the law of the state under which the service was made." *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 560 (D.N.J. 2009) (citing *Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986)). Under New Jersey state law, when a defendant places the effectiveness of service at issue, the plaintiff bears the burden of proving that "an alleged agent has specific authority, express or implied, for the receipt of process . . . ." *Zoning Bd. of Adjustment of Sparta Twp. v. Serv. Elec. Cable,* 487 A.2d 331, 335 (N.J. Super. Ct. App. Div. 1985); *see also Local 617 v. Hudson Bergen Trucking Co.*, 440 A.2d 18, 21 (N.J. Super. Ct. App. Div. 1981) (noting that "it is clearly plaintiff's burden of proving that an agency relationship existed . . . .").

    2.    <u>Analysis</u>

In New Jersey, service on a foreign corporation may be effected in one of two ways: either (1) pursuant to Rule 4(h)(1)(B), or (2) pursuant to New Jersey Court Rule 4:4–4(a)(6). *See Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 602-03 (D.N.J. 2003).

      a.      <u>Service of Process under Rule 4(h)(1)(B)</u>

Under Rule 4(h)(1)(B), service of process can be effected on a foreign corporation through delivery of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). In order for service of process upon an agent to be effective, it must be shown that the agent was actually appointed by the defendant for the specific purpose of receiving process. *U.S. v. Marple Cmty. Record, Inc.*, 335 F. Supp. 95, 101 (E.D. Pa. 1971) (citation omitted).

New Jersey courts have found that mere acceptance of service by an employee other than an officer, director, trustee or managing or general agent does not establish that the employee was authorized to do so. *Jameson v. Great At. and Pac. Tea Co.*, 833 A.2d 626, 632 (N.J. Super. Ct. App. Div. 2003) (citing *Local 617*, 440 A.2d at 18). "The thirty day removal deadline under § 1446(b) is not triggered by 'mere receipt of the complaint,' but only by 'formal service.'" *Lee v. Genuardi's Fam. Markets, L.P.*, No. 10-01641, 2010 WL 2869454, at *1 (D.N.J. July 19, 2010) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999)).

Here, Defendant offers a Certification from Mr. Tesch indicating that he was in no way authorized to accept service on behalf of Husqvarna AB, and is not even an employee of Defendant. (Tesch Certif. ¶¶ 10–11.) Plaintiff has not met his burden of providing any evidence to the contrary. Plaintiff could, for example, offer legal filings by Husqvarna AB indicating that Mr. Tesch is, in fact, Defendant's registered agent. *See, e.g., Scalla v. KWS, Inc.*, No. 18-1333, 2018 WL 6271646, at *4 (E.D. Pa. Nov. 30, 2018). Plaintiff only states that "Mr. Allen at the RedMax Matawan office, and Mr. Tesch, at the Husqvarna North American headquarters in

North Carolina[3] both willingly accepted service with indicia to the process server that they were so authorized to accept." (Pl.'s Moving Br. 6) (citing Affidavits of Service, Exs. C and E to Pl.'s Certif. of Counsel, ECF No. 5-1). As discussed above, however, mere acceptance of service is insufficient to demonstrate an agency relationship, and Plaintiff has not pointed to any indicia beyond mere acceptance. *Marple Cmty. Record, Inc.*, 335 F. Supp. at 102.

Plaintiff cites *O'Connor v. Altus* for the proposition that service on a non-agent corporate employee may be sufficient when the individual is "so integrated with the organization that he will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." *O'Connor v. Altus*, 335 A.2d 545, 556 (N.J. 1975). In *O'Connor*, however, the individuals found to meet those criteria bore a much closer relationship to the agent than they do in the instant case. The court in *O'Connor* found service upon a National Football League team proper when made upon the head coaches of the team, and likewise found service upon a corporation's registered agent proper when tendered to the agent's secretary. *Id.* at 556–57 (citing *American Football League v. National Football League*, 27 F.R.D. 264 (D. Md. 1961). In those instances, the plaintiff could "reasonably expect [that service upon the non-agent] [would] result in delivery of the process to a person described in Rule 4(d)(3) . . . thereby giving the defendant notice that an action [had] been commenced against it . . . ." *O'Connor*, 335 A.2d at 556.

Here, contrary to Plaintiff's belief, the purported agent is not even an employee of Defendant, much less someone "so integrated with the organization that he will know what to do with the papers." *Id.* Tesch is an employee of an independent subsidiary of Defendant that is

---

[3] Defendant disputes Plaintiff's characterization of this location as Husqvarna AB's North American headquarters, stating "[i]n reality, Husqvarna AB simply does not have a North American headquarters." (Def.'s Opp'n Br. 11.)

located in a different country than Defendant. Plaintiff's service of the summons and complaint on Tesch is more akin to that in *West v. American Honda Motor Co.* In that case, the plaintiff served a complaint on employees of a Honda parts center in New Jersey that was intended for Honda Motor Company, which was incorporated in California. *West v. Am. Honda Motor Co.*, No. 08-0700, 2008 WL 4104683, at *4 (D.N.J. Aug. 28, 2008). The District Court found that because "[p]laintiff has not submitted any evidence that he served a proper agent of [d]efendant or that an agency relationship exists between the Security Office of Honda Parts Center and Honda Motor Co., Inc." it could not conclude that the plaintiff properly served his complaint under Rule 4(h)(1)(b). *Id.* Similarly, here, because Plaintiff has not made a showing either that Mr. Tesch is an agent of Husqvarna AB or that an agency relationship exists between either of Mr. Tesch's American employers and Defendant, the Court cannot conclude that Plaintiff properly served Defendant.

b.  <u>Service of Process under N.J. Ct. R. 4:4–4(a)(6)</u>

Service of process can also be effected upon a foreign corporation pursuant to New Jersey Court Rule 4:4–4(a)(6). *See* Fed. R. Civ. P. 4(h)(1)(A) (permitting a foreign corporation to be served in the same manner prescribed for individuals under Federal Rule 4(e)(1)); Fed. R. Civ. P. 4(e)(1) (allowing an individual to be served "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"). *See Honda Motor Co.*, 2008 WL 4104683 at *4.

New Jersey Court Rule 4:4–4(a)(6) permits service on a corporation by delivering a summons and complaint to:

> any officer, director, trustee, or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at

8

> the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law.

N.J. Ct. R. 4:4–4(a)(6). Here, again, Plaintiff bears the burden of proving that the alleged agent, in this case, Mr. Tesch, is an individual eligible to accept service of legal papers under applicable law. The unrebutted evidence before the Court is that he is not, because he is not "an[] employee of the corporation" much less an officer or "person authorized by appointment or law" to receive service on behalf of Husqvarna AB. Plaintiff's service, therefore, fails under the New Jersey rules of service for the same reason it does under the federal rules of service—Plaintiff has not met his burden of demonstrating an agency relationship between Mr. Tesch and Defendant, or that he was otherwise authorized to receive service on behalf of Defendant. Plaintiff's Motion to Remand must, accordingly, be denied.

    **B.**    **Defendant's Motion to Dismiss**

        1.    <u>Legal Standard</u>

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements

of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation and citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

2. <u>Analysis</u>

Plaintiff alleges that "[o]n or before September 28, 2018, Plaintiff Robert Broschart was using a 'line trimmer' designed, manufactured and distributed by defendants." (Am. Compl. ¶ 8.) He further alleges that the line trimmer that injured him "was not reasonably fit, suitable or safe for its intended proposed use because it failed to contain adequate warnings and instructions." (*Id.* ¶ 9.) The Amended Complaint includes no additional facts describing the circumstances of Plaintiff's injury, nor the alleged defects in the equipment or its warnings. *See generally id.*

The New Jersey Product Liability Act (hereinafter "PLA") establishes the sole method of prosecuting a product liability action. *Tirrell v. Navistart Int'l., Inc.*, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991)). A claim falls within the ambit of the PLA if the plaintiff alleges the product harmed him by causing "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; [or] (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C–1(b)(2).

To successfully plead a claim under the PLA, plaintiffs must show that the product at issue is not "reasonably fit, suitable or safe for its intended purpose" because of a 1) manufacturing defect, 2) defective design, or 3) inadequate warnings or instructions. *Kemly v. Werner Co.*, 151 F. Supp. 3d 496, 504 (D.N.J. 2015). In order to prove a defect, including a

10

warning defect, a plaintiff must establish four elements: "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823 (D.N.J. 2019) (citing *Myrlak v. Port Auth. of N.Y. & N.J.*, 723 A.2d 45, 52 (N.J. 1999)).

Defendant here concedes that Plaintiff has submitted well-pleaded facts asserting that (1) Defendant designed and manufactured the line trimmer, and that (2) Defendant was injured by a defective condition of the line trimmer, but contends that Plaintiff does not sufficiently plead any facts regarding the alleged defects in the device. (Def.'s Moving Br. 11.) Rather, Defendant asserts, Plaintiff merely recites the legal elements of a PLA action, claiming that the device "was not reasonably fit, suitable or safe for its intended proposed use . . . [,]" which is insufficient to state a claim for relief. (*Id*) (citing Am. Compl. ¶ 9.) The Court agrees.

A plaintiff fails to state a claim for inadequate warning when the pleading merely "recite[s] the bare legal elements of causes of action, with no supporting facts." *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 593 (D.N.J. 2015). Plaintiff here does not identify what warnings were on the line trimmer, if any, or, specifically, what dangers should have been disclosed. (*See generally* Am. Compl.) Plaintiff, accordingly, fails to allege sufficient facts to state a claim, and Defendant's Motion to Dismiss is granted pursuant to Rule 12(b)(6). *Stich v. Smith & Nephew, Inc.*, No. 20-13811, 2021 WL 1997411, at *3 (D.N.J. May 19, 2021) (citing *Tafaro v. Six Flags Great Adventure, LLC*, 2018 WL 1535289, at *3 (D.N.J. Mar. 29, 2018) (dismissing failure to warn claim where "there [we]re no allegations concerning what warning was provided, [nor] what warning would have been provided by a reasonably prudent

11

person in the same circumstances[.]")). The Court does not reach Defendant's additional arguments that Plaintiff's complaint should be dismissed under Rules 12(b)(2) or 12(b)(5).

### C. Plaintiff's Claim for Punitive Damages

Because Plaintiff fails to state a substantive cause of action, no consideration of Plaintiff's claim for punitive damages in his prayer for relief is required. *O'Connor v. Harms*, 266 A.2d 605, 609 (N.J. Super. Ct. App. Div. 1970) ("punitive or exemplary damages will not be awarded unless there is an independent cause of action for compensatory damages"). Even if Plaintiff had pled a cause of action for which punitive damages were available, Plaintiff's allegations in the Amended Complaint are insufficient to sustain a claim under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15–5.9 *et seq.*

Under the Punitive Damages Act, a plaintiff must prove, "by clear and convincing evidence, that . . . the defendant's acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. § 2A:15–5.12. "Actual malice" is defined as "an intentional wrongdoing in the sense of an evil–minded act." N.J. Stat. Ann. § 2A:15–5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.* "Mere negligence, no matter how gross, will not suffice as a basis for punitive damages." *Smith v. Whitaker*, 734 A. 2d 243, 254 (N.J. 1999). "There must be circumstances of aggravation or outrage, which may consist of such a conscious and deliberate disregard of the interests of others that the [defendant's] conduct may be called wanton and willful." *Dong v. Alape*, 824 A.2d 251, 257 (N.J. Super. Ct. App. Div. 2003). This "standard can be established if the defendant knew or had reason to know of circumstances which would bring

home to the ordinary reasonable person the highly dangerous character of his or her conduct." *Id.* (citing *McLaughlin v. Rova Farms, Inc.*, 266 A.2d 284, 306 (N.J. 1970)).

Overall, courts have described the punitive damages standard as a strict one; punitive damages are limited to only "exceptional cases." *Pavlova v. Mint Mgmt. Corp.*, 868 A.2d 322, 326 (N.J. Super Ct. App. Div. 2005); *see also Dong*, 824 A.2d at 257 (noting that defendant's conduct must be "particularly egregious"). Moreover, because punitive damages awards are not designed to compensate plaintiffs, an award does not depend upon the extent of injury suffered. *See Smith*, 734 A.2d at 254.

Here, Plaintiff has not alleged that Defendant acted with actual malice. Nor does the Amended Complaint contain any factual allegations to support a finding that Defendant acted with wanton or willful disregard of persons who could foreseeably be harmed by Defendant's conduct. Plaintiff only alleges that *Defendant's equipment* "was not reasonably fit, suitable or safe for its intended proposed use because it failed to contain adequate warnings and instructions." (Am. Compl. ¶ 9.) Plaintiff offers no allegations of egregious conduct that would be necessary for the Court to award punitive damages. *See Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995) ("[A]n award of punitive damages requires a showing of culpability in excess of that needed to state the bare bones elements of the underlying [claim]."). Therefore, because Plaintiff has failed to state a product liability claim for which punitive damages would be available, and because Plaintiff has failed to allege any facts showing that Defendant acted with "actual malice" or "wanton and willful disregard," Plaintiff's claim for punitive damages is dismissed, without prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's Motion to Remand, and grants Defendant's Motion to Dismiss for failure to state a claim under Rule 12(b)(6). The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE